UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TELISHA M. CAIN,
                Plaintiff,

                                  CIVIL ACTION

                                  No. 3:15-00351-JWD-EWD

VERSUS

HALLMARK CARDS, INC.,
                Defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

Before the Court is the Motion for Summary Judgment ("MSJ"), (Doc. 16), filed by Hallmark Cards, Inc. ("Hallmark" or "Defendant"). Ms. Telisha M. Cain ("Cain" or "Plaintiff") has countered with the Memorandum in Opposition to Summary Judgement ("Opposition"). (Doc. 20.) Hallmark has responded with a Reply Memorandum in Support of Motion for Summary Judgment ("Reply"). (Doc. 22.) The crux of the dispute between Plaintiff and Defendant (collectively, "Parties"), as articulated in the MSJ, Opposition, and Reply (collectively, "Motions"), is a twenty-line poem, penned in free verse, by two seemingly different hands seven years apart.

Briefly summarized, the MSJ advances a simple argument based on a single asserted fact, one supported by the affidavits, drafts, and other materials appended as exhibits to this dispositive motion. Because an employee of Hallmark, Ms. Diana Manning ("Manning"), wrote a certain poem ("Hallmark's Poem") in 1998 in her capacity as one of Defendant's many

contract writers and her employer commenced utilizing it in 1999, Hallmark could not have copied Plaintiff's substantively identical version ("Plaintiff's Poem"), first written in 2005 and published on May 19, 2005. Based on this uncontroverted fact, Hallmark cannot be liable for copyright infringement in violation of the Copyright Act of 1976 ("Act").[1] With Plaintiff having provided no evidence to dispute this central claim, she has failed to clear the minimum hurdle set forth in Federal Rule of Civil Procedure 56,[2] and Defendant merits summary judgment in its favor. Naturally, Plaintiff contends otherwise. Conceding that she created and published Plaintiff's Poem no earlier than the spring of 2005 on www.poetry.com ("Website"), she nonetheless contends that she is the rightful owner of Hallmark's Poem, her uncontested copyright having been infringed by Defendant's nearly indistinguishable poem.

On this issue, the Act, as originally written and as long construed, is clear. A plaintiff alleging copyright infringement bears the burden of proving not only ownership of a valid copyright but also the copying by the relevant defendant of constituent elements of an original work that has been so protected. As Plaintiff has not provided more than conclusory assertions and unsubstantiated allegations regarding these threshold requirements after the end of fact discovery, no evidence for the non-movant on essential elements of her claim can be mined from a now closed record. As a matter of law, however, Rule 56 demands more than a scintilla. For these reasons, as more fully detailed below, the MSJ must be granted.

## II.     BACKGROUND

---

[1] The specific provisions of the Act, set forth in 17 U.S.C. §§ 101–810 inclusive, are referred to in this ruling as "Section []" or "§ []" unless otherwise noted.

[2] In this ruling, any and all references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

**A.     Relevant Facts**

On May 19, 2005, Cain submitted Plaintiff's Poem, entitled "I'm Falling in Love with You,"[3] to the Website. (Doc. 20 at 1; *see also, e.g.*, Doc. 1 at 2; Doc. 1-1 at 1; Doc. 3 at 1.) Nineteen days later, the Website informed Plaintiff that her poem had been selected as a semifinalist in one of this organization's international contests. (Doc. 20 at 1, 7–8; Doc. 1-1 at 5; *cf.* Doc. 13.) In the letter so declaring, the Website indicated its intent to publish Plaintiff's Poem "on its own page in what promises to be one of the most highly regarded collections of poetry we have ever published," slated to be called *Eternal Portraits*. (Doc. 20 at 7 (emphasis in original); Doc. 1-1 at 5 (emphasis in original).) While Plaintiff needed to incur no costs for this publication to be effected, the Website required payment prior to delivery of a paper copy of *Eternal Portraits*, "welcom[ing]" her order and "guarantee[ing]" her "satisfaction." (Doc. 20 at 7; Doc. 1-1 at 5.) Regardless of her decision, as this letter further explained, despite this forthcoming publication, Plaintiff "retain[ed] the copyright to . . . [her] own work of art." (Doc. 20 at 8 (emphasis in original); Doc. 1-1 at 5 (emphasis in original).) Furthermore, Cain had to expressly certify that her piece was an "original work" via her initials on an addendum, though no such initials appear in the copy provided to the Court. (Doc. 20 at 9; Doc 1-1 at 6.) Per the Opposition, the Website allegedly claimed that more than 700 million authors and publishers had "access to view other peoples' work on . . . [its] website."[4] (Doc. 20 at 2.)

---

[3] A copy of the Plaintiff's Poem appears as an attachment to the Opposition, (Doc. 20 at 5), as well as the complaint, (Doc. 1-1 at 2, 3).Hallmark's Poem can be found as an exhibit to the MSJ. (Doc. 16-2 at 8; Doc. 16-3 at 5–6.)

[4] The precise import of this claim is unclear. Technically, anything posted on the internet, assuming no restrictions are encoded, can be viewed by any person with a web connection, whether in Missouri, where Defendant's headquarters are located, or in Louisiana where Plaintiff resides. This fact will prove dispositive. *See infra* Part III.B.

Not until March 28, 2013, however, did Plaintiff formally apply for a Certificate of Registration with the United States Copyright Office ("Office"). (Doc. 20 at 12; Doc. 1-1 at 1.) Eventually, Plaintiff's Poem did receive an official copyright designation. (Doc. 20 at 12; *see also* Doc. 1-1 at 1.) Numbered TX 7-780-355, this designation became legally effective on May 24, 2013. (Doc. 20 at 12; Doc. 1-1 at 1.) More than seven years separated Cain's submission of Plaintiff's Poem to the Website and her filing of the Certificate of Registration, and more than eight years passed before the former and the copyright's formal registration with the Office. (Doc. 20 at 12; Doc. 1-1 at 1.)

Three years before Plaintiff's birth, Manning began working for Hallmark as a contract writer, a job she held until 2001. (Doc. 16-1 at 1; Doc. 20 at 12.) Under the Act, her written work during this period qualified as "works for hire," and Hallmark, as her employer, thus owned every line. (Doc. 16-1 at 2; *see also* Doc. 16-2 at 2.) In May of 1998, Hallmark paid Manning $3,200 for 16 works of poetry. (Doc. 16-1 at 2; *see also* Doc. 16-2 at 2, 3–4.) Among this set was Hallmark's Poem, versions of which Hallmark has used in countless greeting cards since 1999. (Doc. 16-1 at 2; *see also, e.g.*, Doc. 16-2 at 2; Doc. 16-3 at 2.) In particular, prior to 2005, Defendant has distributed versions of Hallmark's Poem in various commercial establishments, including pharmacies and grocery stores, located throughout the Baton Rouge metropolitan area. (Doc. 16-1 at 2–3.) For support, Hallmark attaches the affidavits of Manning, (Doc. 16-2 at 1–2), and Mr. Kenneth Rock, (Doc. 16-3 at 1–4), the employee who has worked for Defendant since September 2, 1986, and now serves as its eDiscovery Leader, (Doc. 16-3 at 1). Copies of Manning's original draft, records of sales, and more have also been provided to this Court and to Plaintiff. (Doc. 16-2 at 7; Doc. 16-3 at 8–32.)

As Plaintiff claims, in May of 2006 and March of 2013, she first saw greeting cards, produced by Defendant, containing iterations of Hallmark's Poem. (Doc. 20 at 1.) She now alleges that these versions could be nothing but unauthorized copies of Plaintiff's Poem, her own original work. (*Id.*) Thus, she contacted Defendant, demanding damages of several millions of dollars as royalties and an injunction barring further sales of cards inscribed with any work, including Hallmark's Poem, similar to her own. (Doc. 1 at 2; Doc. 13 at 1.) In response, Hallmark denied such copying, maintaining that the language on these cards was nothing but iterations of Hallmark's Poem, as originally created by Manning in the spring of 1998. (Doc. 16-1 at 3–4, 6–7; *see also* Doc. 20 at 2.) Before and after this case, it provided Plaintiff with evidence of its prior ownership and Manning's role and even accused Plaintiff of violating Hallmark's copyright. (Doc. 16-1 at 5–6.)

**B.     Procedural Background**

On June 24, 2014, based on these same facts, Plaintiff first sued Defendant for copyright infringement. (Doc. 1, No. 14-cv-00389-JJB-RLB.[5]) This complaint was dismissed on April 14, 2015, due to Plaintiff's failure to properly serve Defendant. (Doc. 21, No. 14-cv-00389-JJB-RLB.) On June 1, 2015, this case began with Plaintiff's filing of a second pleading ("Complaint"). (Doc. 1.[6]) Hallmark answered on September 11, 2015, (Doc. 14), and docketed the MSJ on October 30, 2015, (Doc. 16). The Opposition followed on December 28, 2015. (Doc. 20.) The Reply was filed on January 11, 2016. (Doc. 22.) A hearing on the Motions was scheduled for April 27, 2016, at 1:30 p.m. on April 18, 2016. (Doc. 23.)

---

[5] In this ruling, a docket number will only be provided when this Court cites to court documents from another case's docket, as it does so here.

[6] The two complaints are identical. (*Compare* Doc. 1, No. 14-cv-00389-JJB-RLB, *with* Doc. 1.)

**C.     Parties' Arguments**

Defendant argues for its MSJ's success for two interrelated reasons. Both arise from a single fact, as Hallmark sees it: in May of 1998, Manning produced Hallmark's Poem, twenty lines "substantially identical" to Plaintiff's Poem, and Hallmark proceeded to use versions of this poem in countless cards beginning in 1999. (Doc. 16-1 at 2–3; *cf.* Doc. 22 at 1, 2–3.) These two factual contentions, Hallmark emphasizes, are attested by two affidavits, sales records, and multiple copies of the cards actually sold in the last seventeen years. (Doc. 16-2; Doc. 16-3.) In the face of this evidence, Plaintiff has cited to a Certificate of Registration, dated March 28, 2013, and a registration made official only on May 24, 2013. (Doc. 20 at 12; Doc. 1-1 at 1.) But, since the Act vests copyright whenever a work is "fixed in a tangible medium of expression," registration is irrelevant to whether copyright protection attaches to a particular work. (Doc. 22 at 3; *see also* Doc. 16-1 at 3–5.) Regardless, per the Act, registration is "prima facie evidence of the validity" of a copyright only if "made before or within five years after first publication of the work." (Doc. 22 at 3 (quoting § 410(c)); *see also* Doc. 16-1 at 4–5.) Unfortunately for Plaintiff's case, as her own filings indicate, (Doc. 1; Doc. 20), the gap between production and publication and registration totals at least seven years, *see supra* Part II.A. In fact, by Hallmark's reckoning, Plaintiff has already conceded the crucial issue: that Plaintiff's Poem dates to May of 2005, (Doc. 20 at 1; *see also* Doc. 1 at 2), roughly seven years after Manning wrote the nearly identical Hallmark's Poem,[7] (Doc. 16-1 at 1–3; Doc. 22 at 1, 4). Because copyright infringement under the Act compels a plaintiff to prove both ownership of a copyrighted material and actual copying by

---

[7] According to Defendant, Manning wrote the poem in May of 1998. (Doc. 16-1 at 2.) According to Plaintiff, she drafted it in May of 2005, publishing it on the Website on May 19, 2005. (Doc. 1-1 at 1.)

another, this uncontested timeline renders it impossible for Plaintiff to prove the latter element. (Doc. 16-1 at 3–4; Doc. 22 at 3.) In sum, for two separate reasons—Hallmark claims ownership of the only relevant copyright and dismisses the significance of Plaintiff's belated registration of her poem, and Plaintiff cannot prove copying when its version predates her formulation—Plaintiff now suffers from an absence of key evidence as to essential elements of her asserted cause of action. In such circumstances, Rule 56 militates in favor of the MSJ's granting.

Plaintiff, in turn, does not dispute Defendant's construction of the Act. Maintaining that Plaintiff's Poem received copyright protection as soon as it was created and embodied in tangible form, she fixes May 2005 as the relevant date. (Doc. 20 at 2.) Hallmark, she argues, has presented no "proof of copyrights and registration" by either it or Manning which would verify their story; at present, Hallmark's Poem has only been alleged to date to 1998. (*Id.*) Meanwhile, millions of authors and publishers, according to the Website, have access to the poetry that it posts. (*Id.*) Thus, having discounted Hallmark's claim regarding the origin of Hallmark's Poem, she implies no other explanation but deliberate copying from the Website could explain the similarities between her poem and Manning's creation. (*Id.* at 3.) Hence, she asks not only for dismissal of the MSJ but also a ruling establishing her status "as the rightful owner" and her entitlements to "all royalties" due under the Act for the infringement of her legitimate copyright. (*Id.*)

## III.   DISCUSSION

**A.   Governing Law**

*1.      Procedural Law: Rule 56*

Under Rule 56(a), summary judgment is generally appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (quoting Rule 56(a)). A dispute is "genuine" so long as "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"; a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Ray v. United Parcel Serv.*, 587 F. App'x 182, 186 (5th Cir. 2014) (citing *Anderson*, 477 U.S. at 248).

Axiomatically, a court construes all facts and evidence in the light most favorable to the nonmovant. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013). In response to another's motion, the nonmovant cannot rely on "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments," none "an adequate substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). Still, "[w]hen both parties have submitted evidence of contradictory facts," *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005), a court is bound to "draw all reasonable inferences in favor of the nonmoving party" and cannot "make credibility determinations or weigh the evidence," *Reeves v. Sanderson Plumping Prods.,* 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000); *see also Anderson*, 477 U.S. at 248 (emphasizing the irrelevance of "[a]ny proof or evidentiary requirements imposed by the substantive law," materiality "not a criterion for evaluating the evidentiary underpinning of [factual disputes]").

Thus, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." 9A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2529 (2d ed. 1995). In other words, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151, *cited in Havera*, 723 F.3d at 591. If more than a scintilla of evidence is assembled, "[t]he court must resolve factual controversies in favor of the nonmoving party." *White v. Gov't Emps. Ins. Co.*, 457 F. App'x 374, 377 (5th Cir. 2012). Under Rule 56, summary judgment is hence inappropriate (1) if there are legitimate, not superficial or frivolous, factual disputes that may affect the outcome of the case under the applicable substantive law, *see Anderson*, 477 U.S. at 248, and (2) so long as the nonmovant does not exclusively rely on "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated" or "bare assertions," or "a scintilla of evidence," *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Hopper v. Frank*, 16 F.3d 92, 94 (5th Cir. 1994); and *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)). An alleged "lack of evidence to support the non-moving party's case" can hence be countered by "[s]pecific evidence in the record," such tailored opposition foreclosing summary judgment. *Jobe v. ATR Mktg., Inc.*, No. 98-31366, 1999 U.S. App. LEXIS 40209, at *8–9, 1999 WL 511380, at *3 (5th Cir. June 23, 1999) (citing *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995), and *ContiCommodity Servs., Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995)).

*2.     Substantive Law: Act*

In the exercise of its constitutional authority, U.S. CONST. art. I, § 8, cl. 8, amending several prior laws, Congress passed the Act in 1976, An Act for the general revision of the Copyright Law, title 17 of the United States Code, and for other purposes, Pub L. No. 94-553, 90 Stat. 2541 (Oct. 19, 1976). Under the Act, "[c]opyright in a work protected under this title vests initially in the author or authors of the work," and "[i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title." 17 U.S.C. § 201(a)–(b); *Goodman v. Lee*, 815 F.2d 1030, 1032 n.6 (5th Cir. 1987) (citing § 201(a)); *Easter Seal Soc'y for Crippled Children & Adults of La., Inc. v. Playboy Enters.*, 815 F.2d 323, 328 (5th Cir. 1987) (citing § 201(b) and the definition of "work for hire" encoded in § 101(1)–(2)). A copyright arises—and the Act's protection attaches—once an "original work[] of authorship" has been "fixed in any tangible medium of expression, now known or later developed, for which . . . [it] can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a); *see also, e.g.*, *Rodrigue v. Rodrigue*, 218 F.3d 432, 435–36 (5th Cir. 2000) ("[T]he author's copyright arises at the moment of creation of the work[.]"); H.R. REP. No. 94-1476, at 51 (1976) (describing "originality and fixation in tangible form" as the "two fundamental criteria of copyright protection" established in § 102(a)).

While § 102(a) specifies the two predicates for a copyright's emergence, § 411(a) adds a wrinkle. In pertinent part, this subsection provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title," and registration requires the

submission of an application, fee, and two complete copies of the work to be copyrighted. 17 U.S.C. §§ 411(a), 408(a), (b)(2). Of importance here, while a certificate of registration "made before or within five years after first publication of the work . . . constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate," its evidentiary weight outside this temporal window lies wholly within a court's discretion. *Id.* § 410(c); *Cosmetic Ideas, Inc. v. IAC/InteractiveCorp*, 606 F.3d 612, 621 n.14 (9th Cir. 2010) (quoting § 410(c)). "Although this registration requirement does not circumscribe a federal court's subject-matter jurisdiction," *Alicea v. Machete Music*, 744 F.3d 773, 778 (1st Cir. 2014), it remains a "precondition to filing a claim," *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157, 130 S. Ct. 1237, 1241, 176 L. Ed. 2d 18 (2010). Reading the Act *in toto*, a plaintiff alleging copyright infringement has the burden of proving not only registration but also two more statutory elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 360, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991); *see also, e.g.*, *Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC*, 560 F.3d 53, 58 (1st Cir. 2009)).

**B.    Application**

With the registration by Cain of Plaintiff's Poem relevant but not dispositive, Plaintiff's failure to satisfy the Act's second and third requirements dictate this Court's resolution of the present motion.

First, for Plaintiff to possess a valid copyright under § 102(a), her poem must have been original when produced in 2005. 17 U.S.C. § 102(a); *Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 837 (10th Cir. 1993). If not, not even Defendant's copying of Plaintiff's Poem would

trigger civil liability. So far, however, Defendant has presented substantial evidence indicating that Hallmark's Poem dates to 1998 and was distributed on greeting cards beginning in 1999, from affidavits to production and sales records to pre-2005 samples. (*See, e.g.*, Doc. 16-2; Doc. 16-3.) Cain herself concedes that she first produced Plaintiff's Poem in May of 2005 and does not directly rebut Defendant's timeline, faulting Defendant for not presenting "proof of copyrights and registration." (Doc. 20 at 1–2.) Under the Act, however, registration is not necessary, *see supra* Part III.A.2, and Defendant's multitude of evidentiary submissions do, in fact, constitute evidence of its copyright. Rather than provide some evidence gleaned from the existing record to cast doubt on this proof, she has made only "conclusory allegations," "unsubstantiated" and "bare assertions," and not even "a scintilla of evidence." *Little*, 37 F.3d at 1075. Under Rule 56, such an inability to support a key statutory element upon which she bears the burden of proof is fatal.

Second, for the Complaint to withstand the MSJ, Hallmark must have undertaken a certain type of copying, for "copying does not invariably constitute copyright infringement." *Johnson v. Gordon*, 409 F.3d 12, 18 (1st Cir. 2005*); see also Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 66 (1st Cir. 2009). As much precedent makes clear, even when two works are substantially similar with respect to protectable expression, such as the poems central to this proceeding, "if the defendant did not copy as a factual matter, but instead independently created the work at issue, then infringement liability must be denied." *Airframe Sys. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 105 (1st Cir. 2011); *see also* 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.01[B] (2011) (noting that proof of "[b]oth species of copying"— substantial similarity and actual copying—is "essential for the plaintiff to prevail"). Hence, "civil liability will not lie if an author fortuitously creates a work that is substantially similar to another

author's copyrighted work"; stated differently, actionable "[c]opying is of necessity an intentional act."[8] *United States v. Liu*, 731 F.3d 982, 991 (9th Cir. 2013). True, like many a fraud action, *see, e.g.*, *JRC Lumber Corp. v. Suarez (In re Suarez)*, No. 08-15732 (DHS), 2010 Bankr. LEXIS 1340, at *30, 2010 WL 1382110, at *11 (Bankr. D.N.J. Apr. 6, 2010), such intentional copying is often demonstrated by means of circumstantial evidence, such as proof that a defendant had an opportunity to view or copy the allegedly copied work, *see, e.g.*, *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977). Nonetheless, as courts have clarified, "[e]stablishing a bare possibility of access is not enough," and a plaintiff "must prove that . . . [a] defendant[] had a reasonable possibility of viewing the work." *Derrick v. Columbia Pictures Indus.*, 972 F.2d 939, 942 (8th Cir. 1992) (internal quotation marks omitted). Applying this doctrine, courts have consistently refused to treat internet publication alone as sufficient to engender this requisite possibility. *See, e.g.*, *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1167 (N.D. Cal. 2014); *Bldg. Graphics, Inc. v. Lennar Corp.*, 708 F.3d 573, 580 (4th Cir. 2013); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003).

Once the Complaint and the Opposition are examined, however, one conclusion is inescapable: though the Act, so construed, requires more, Plaintiff has argued for a reasonable possibility based on precisely such an internet posting, giving no proof that Defendant, its agents, or Manning visited the Website and manufactured Hallmark's Poem based on Plaintiff's version. (*See* Doc. 20 at 2.) In fact, she has failed to offer any competent evidence that Manning herself

---

[8] A closely related phenomenon, "cryptomnesia" occurs when a forgotten memory returns without it being recognized as such by a subject who steadfastly believes it is something new and original. *See* RONALD T. KELLOGG, THE PSYCHOLOGY OF WRITING 85 (1999). Many esteemed persons, from Friedrich Nietzsche to Helen Keller, arguably suffered from this psychological condition. *See, e.g.*, Joshua Foer, *Kaavya Syndrome*, SLATE, Apr. 27, 2006, *available at* http://www.slate.com/articles/health_and_science/science/2006/04/kaavya_syndrome.single.html (last visited on June 2, 2016); FRANCES OPPEL, NIETZSCHE ON GENDER 204 (2005).

did not write Hallmark's Poem in 1998, as Manning has credibly avowed, (*See* Doc. 16-2), and others just as plausibly maintain, (*See* Doc. 16-3), via submissions that this Court cannot question in the absence of such contrary proof. As such, with these failings manifest, Plaintiff has not provided evidence of a chain of events sufficient to establish a reasonable possibility of success for purposes of Rule 56. *See, e.g.*, *Art Attacks*, 581 F.3d at 1144; *Jason v. Fonda*, 698 F.2d 966, 967 (9th Cir. 1982). In the end, she has pointed to an online address, but that alone will not do, regardless of how similar the two works of verse may be. *L.A. Printex Indus. v. Williams Carter Co.*, No. CV 09-2449-JFW (FMOx), 2010 U.S. Dist. LEXIS 73235, at *11–12, 2010 WL 5174378, at *3 (C.D. Cal. July 2, 2010) (summarizing cases), *rev'd*, 676 F.3d 841; *see also Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000). In the simplest of terms, the Act demands more than she has given for her case to be maintained under Rule 56.

## IV.    CONCLUSION

In the context of copyright infringement, a court may properly determine non-infringement of copyright as a matter of law when a plaintiff fails to marshal sufficient and competent evidence to support a finding that there exists a reasonable possibility the defendant had access to the copyrighted work. Quite simply, even when every inference is made in Plaintiff's favor, this case's indisputable record forces this Court to conclude that she has not met her burden. Her failure manifest, Rule 56 compels one result. Accordingly, for the foregoing reasons, **this Court GRANTS Defendant's Motion for Summary Judgment**, (Doc. 16).

Signed in Baton Rouge, Louisiana, on June 6, 2016.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**